IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Stacy Jones, ) | C/A No. 0:14-4534-DCN-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Stacy Jones, brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

## SOCIAL SECURITY DISABILITY GENERALLY

    Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the ALJ to consider, in sequence:

>  (1) whether the claimant is engaged in substantial gainful activity;
>
>  (2) whether the claimant has a "severe" impairment;
>
>  (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
>  (4) whether the claimant can perform her past relevant work; and
>
>  (5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In June 2011, Jones applied for SSI, alleging disability beginning February 1, 2006. Jones's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 10, 2013 at which Jones, who was represented by Samuel Jefcoat, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 12, 2013 denying benefits and concluding that Jones was not disabled. (Tr. 22-34.)

Jones was born in 1981 and was thirty years old at the time her application was filed. (Tr. 32, 147.) She has an eighth-grade education and past relevant work experience as a fast food worker, a hotel housekeeper, and a parts inspector at an automotive manufacturer. (Tr. 186.) Jones alleged disability due to bipolar disorder, seizures, and mental retardation. (Tr. 185.)

In applying the five-step sequential process, the ALJ found that Jones had not engaged in substantial gainful activity since June 1, 2011—the date her application was filed. The ALJ also determined that Jones's epilepsy, borderline intellectual functioning, and bipolar disorder were severe impairments. However, the ALJ found that Jones did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Jones retained the residual functional capacity to

> perform medium work as defined in 20 CFR 416.967(c). The claimant can lift and carry fifty pounds occasionally, and twenty-five pounds frequently. She can stand and walk for six hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. The claimant must avoid exposure to hazards. She can perform unskilled work that requires no interaction with the public.



(Tr. 27.) The ALJ found that Jones was unable to perform any past relevant work but, considering Jones's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Jones could perform. Therefore, the ALJ found that Jones had not been under a disability since June 1, 2011—the date the application was filed.

The Appeals Council denied Jones's request for review on September 24, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



**ISSUES**

Jones raises the following issues for this judicial review:

I. The ALJ failed to properly assess medical opinion evidence[; and]
II. The ALJ did not explain [her] findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

(Pl.'s Br., ECF No. 12.)

**DISCUSSION**

Although Jones raises several issues regarding the ALJ's evaluation of the medical opinion evidence for this judicial review, the court finds for the reasons discussed below that remand is warranted on the ALJ's evaluation of the opinion evidence from Dr. Bismark Amoah-Apraku, Jones's treating physician, and therefore addresses this issue first.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 416.927(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th

Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that
>
> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

In this case, the ALJ acknowledged that Jones's treating physician, Dr. Amoah-Apraku, had prepared two opinions. In summarizing these opinions, the ALJ observed that on January 9, 2012, Dr. Amoah-Apraku prepared a Physician's Report for a family court proceeding, indicating that Jones's diagnoses included seizure disorder, attention deficit disorder, depression, and chronic back pain. The ALJ stated that Dr. Amoah-Apraku "opined that [Jones] was 'not able to work in his/her usual occupation' and wrote that 'patient is permanently and totally disabled' (37F)." (Tr. 28.) The ALJ also observed that on November 5, 2012, Dr. Amoah-Apraku prepared a medical statement opining that Jones

would be unable to meet competitive standards in her ability to maintain attention and concentration for two hour segments, maintain regular attendance, work in coordination with others, make simple work-related decisions, or complete a normal workday and workweek without interruptions from psychologically based symptoms (40F). However, Dr. Amoah-Apraku found that the claimant had only serious limitations in her ability to interact appropriately with the general public, or to maintain socially appropriate behavior, only limited but satisfactory ability to travel in unfamiliar places, and unlimited or very good ability to use public transportation and to adhere to basic standards of neatness and cleanliness (40F).

(Id.) The ALJ also observed that Dr. Amoah-Apraku indicated that Jones would not be able to manage funds on her own behalf. Additionally, although not included in the ALJ's summary of the November 5 opinion, Dr. Amoah-Apraku opined that Jones would miss more than four days of work per month.

Notwithstanding the specificity of the requirements discussed above, in evaluating these opinions, the ALJ stated only the following:

> Dr. Amoah-Apraku's opinion dated January 9, 2012, is considered. Dr. Amoah-Apraku prepared a medical statement on behalf of the claimant in a family court matter, in which he opined that the claimant was unable to work in her usual occupation, and that she was totally disabled (37F). This opinion is given no weight. This statement is inconsistent with the medical evidence, including treatment records with Dr. Amoah-Apraku. Dr. Amoah-Apraku's opinions do not support a finding of disability. Additionally, the doctor has opined as to vocational issues, which is outside of his area of expertise. He has also opined as to the issue of disability, the determination of which is reserved exclusively to the Commissioner of Social Security. Additionally, because Dr. Amoah Apraku has had a long treatment history with the claimant. Clearly, he has a protective attitude toward the claimant, as evidenced by his support for the claimant in the Family Court matter. This protective attitude is likely to color his assessment of the claimant, in her favor, rather than objectively based upon objective testing or findings.
>
> Dr. Amoah-Apraku's opinion dated November 5, 2012, is considered. This opinion is given great weight regarding his assessment of the claimant's ability to understand and remember simple instructions, but is given no weight as to his conclusion that the claimant would be likely to miss four days of work per month (40F).

(Tr. 32.)  As argued by Jones, the court is constrained to recommend that this matter be remanded because the ALJ failed to specify the weight afforded to the majority of the second opinion.

In this case, the reviewing court is left guessing as to the weight afforded to the majority of the treating physician's second opinion, and why.  The court does observe that earlier in the decision the ALJ discussed several of Dr. Amoah-Apraku's treatment records that the ALJ may have intended to be a basis for discounting aspects of Dr. Amoah-Apraku's second opinion;[2] however, the ALJ's scant evaluation of Dr. Amoah-Apraku's second opinion renders the court unable to determine whether the ALJ's decision is supported by substantial evidence.  This is particularly so in light of

---

[2] Specifically, the ALJ stated as follows:

Although the claimant has relied heavily upon Dr. Apraku's opinions, the doctor also noted in treatment notes beginning in September 2011, that although the claimant reported to the doctor her chief complaints of seizure and pain, she failed to bring in her medications to office visits.  The claimant reported that Lortab was no longer effective for pain control, but reported that she was doing well on her other medications without side effects, and without seizure episodes since her last office visit (38F;48F/20). In September 2012, the claimant again reported doing well on her medications without side effects, with her other conditions remaining stable, and without recent seizures (48F/13,17).  In August 2012, although the claimant reported continuous pain in the left hip radiating into the toes, Dr. Apraku's examination revealed no unusual findings.  However, he repeated his prior assessment of arthralgia of the temporamandibular joint, diverticulitis, dyslipidemia, migraine headache, epilepsy and recurrent seizure, cervicobrachial syndrome, sciatic radiculopathy muscle spasm fibromyalgia, attention deficit hyperactivity disorder, dysuria, urinary tract infection, and taking opiate analgesics long-term. However, Dr. Apraku refilled the clamant's current medications, without changes, and noted that the claimant  reported a possible seizure on one occasion when she was stressed out (48F/17).  At a treatment visit on November 5, 2012, the claimant reported doing well on her medications without side effects (48F/10).  On December 5, 2012, the claimant reported two seizure episodes since her last office visit.  Dr. Apraku increased the claimant's Keppra dosage (48F/7).  At her office visit on January 7, 2013, the claimant expressed no concerns, or episodes of seizure activity.  Dr. Apraku referred the claimant for consultation with Martin Williams, psychiatry (48F/3).

(Tr. 29.)

the fact that, as to the two portions of the November 5 opinion that the ALJ did address, she gave great weight to one statement and no weight to the other. The court is given no indication what the ALJ thought of the rest of it—for example, Dr. Amoah-Apraku's opinions that Jones would be unable to meet competitive standards in her ability to maintain attention and concentration for two-hour segments, work in coordination with others, or make simple work-related decisions. Nor can the court assume that the ALJ gave no weight to the portions of the opinion she did not discuss. Such an assumption would contradict SSR 96-2p's requirement that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. Therefore, the court finds that this matter should be remanded for further consideration of Dr. Amoah-Apraku's second opinion.[3] See Rouse v. Commissioner, C/A No. 0:13-1904-JFA-PJG, 2014 WL 4792058, at *2 (D.S.C. Sept. 24, 2014) (finding that the ALJ failed to comply with SSR 96-2p's requirement of specificity with regard to weight given to the treating source's medical opinion and the court could not determine if the ALJ's decision was based on substantial evidence where the ALJ discussed the opinion evidence but failed

---

[3] Although the ALJ may have provided at least one proper reason to discount Dr. Amoah-Apraku's first opinion—that "[h]e has also opined as to the issue of disability, the determination of which is reserved exclusively to the Commissioner of Social Security," the court is persuaded by Jones's argument that the ALJ failed to provide any support for her determination that Dr. Amoah-Apraku has a protective attitude towards Jones. Cf. Hall v. Astrue, Civil Action No. 7:07cv590, 2008 WL 5455720, at *4 (W.D. Va. Dec. 31, 2008) (stating that "[t]here is simply no basis for an ALJ to reject a treating physician's opinion based on unsupported conjecture of bias," observing that "[t]here is not a shred of evidence in this case to suggest bias on the part of [the treating physician], and any such suggestion is completely unfounded") (Report and Recommendation, adopted by 2009 WL 187984 (W.D. Va. Jan. 23, 2009)). Moreover, the length of the treatment relationship is a factor to be considered in evaluating medical opinions; however, a long relationship with a physician that is familiar with the claimant is typically weighed in favor of the physician's opinion.



to assign any weight to it); Hilton v. Astrue, C/A No. 6:10-2012-CMC, 2011 WL 5869704, at *3 (D.S.C. Nov. 21, 2011) (agreeing that the ALJ needed to state what weight, if any, he gave a treating physician's opinion and holding that the ALJ's conclusion that the opinion is not entitled to controlling weight and that the opinion is against the weight of the record as a whole did not reach the level of specificity required under SSR 96-2p and was insufficient); Tench v. Comm'r of Soc. Sec. Admin., C/A No. 6:10-cv-00691-RBH, 2011 WL 3794080, at *6 (D.S.C. Aug. 25, 2011) (finding that the ALJ's decision stating that a physician's opinion was given "less weight," even if the court could infer it meant some weight less than controlling, was not sufficiently clear what weight, if any, was accorded to the opinion and without knowing specifically the weight accorded to the opinion, the court was unable to properly apply the substantial evidence test to the ALJ's decision to discredit, or possibly disregard entirely, the treating source opinion). Moreover, the court cannot find that this error is harmless.[4] Cf. Davis v. Colvin, No. 9:12-2244-CMC-BM, 2014 WL 172513, at *2 (D.S.C. Jan.15, 2014) ("Although an ALJ is required by Social Security regulations to assign weight to all medical opinions, see 20 C.F.R. § 416.927(e)(2)(ii), an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error when the opinion is consistent with the ALJ's RFC determination.") (citing Morgan v. Barnhart, 142 F. App'x 716, 722-23 (4th Cir. 2005) & Rivera v. Colvin, No. 5:11-CV569-FL, 2013 WL 2433515 (E.D.N.C. June 4, 2013)).

In light of the court's recommendation that this matter be remanded for further consideration, the court need not address Jones's remaining issues, as they may be rendered moot on remand. See

---

[4] The court expresses no opinion as to whether further consideration of Dr. Amoah-Apraku's opinions by the ALJ should necessarily lead to a finding that Dr. Amoah-Apraku's opinions are entitled to controlling weight or that Jones is ultimately entitled to benefits. Further analysis and discussion may well not change the ALJ's conclusion on this point.

Page 10 of 12



Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Jones may present her remaining arguments concerning the ALJ's alleged errors on remand.[5]

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

October 27, 2015  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

---

[5] Although Jones may present her other arguments on remand if necessary, Jones's remaining issues, standing alone, would not warrant a recommendation of remand by the court for further consideration by the Commissioner. However, the crux of several of Jones's arguments with regard to the evaluation of the opinion evidence stems from the ALJ's lack of clarity as to the weight given to the opinion. Although the ALJ indicates the weight given to some of these opinions, such as significant weight or great weight, the ALJ does not appear to acknowledge aspects of these opinions which arguably support Jones's claim. Combined, the lack of detail makes it difficult for the court to determine whether the ALJ's evaluation of these opinions, and ultimately, the residual functional capacity assessment, are supported by substantial evidence.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).